UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LADONNA W., )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI, Acting Commissioner )<br>of the Social Security Administration, )<br>      Defendant. ) | CAUSE NO.: 3:20-CV-227-JVB-MGG |

## OPINION AND ORDER

Plaintiff LaDonna W. seeks judicial review of the Social Security Commissioner's decision denying her applications for disability insurance benefits and supplemental security income and asks this Court to reverse that decision and remand this matter to the agency for further administrative proceedings. For the reasons below, this Court reverses the Administrative Law Judge's decision and remands this matter for further administrative proceedings.

## PROCEDURAL BACKGROUND

In Plaintiff's January 3, 2017, applications for benefits, she alleged that she became disabled on August 28, 2016. After a September 14, 2018 hearing, the Administrative Law Judge (ALJ) found that Plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine with stenosis and radiculopathy, status post microdiscectomy at L4-L5, and osteoarthritis. (AR 12). The ALJ determined that Plaintiff did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and further determined that Plaintiff had

> the residual functional capacity [RFC] to perform light work . . . except she can occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, and occasionally balance, stoop, kneel, crouch and crawl.

(AR 13). The ALJ found that, in light of Plaintiff's RFC, Plaintiff was able to perform her past relevant work as a Protection Signal Operator as both generally and actually performed. (AR 15).

Alternatively, the ALJ also found that Plaintiff was able to perform the representative occupations of routing clerk, marking clerk, collator operator, order clerk, charge account clerk, and call out operator. (AR 17). Accordingly, the ALJ found Plaintiff to be not disabled from August 28, 2016, through December 20, 2018, which is the date of the ALJ's decision. This decision became final when the Appeals Council denied Plaintiff's request for review.

## STANDARD OF REVIEW

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## DISABILITY STANDARD

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) Whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether [he] can perform [his] past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

2

## ANALYSIS

Plaintiff argues that the ALJ erred by cherry-picking the evidence and failing to provide a logical bridge from the evidence to her conclusions. The Court finds no error in the ALJ not finding Plaintiff to have obesity and finding that Plaintiff does not meet or medically equal a listed impairment, but the Court does find that remand is required due to errors in determining Plaintiff's residual functional capacity.

### A. Obesity

Plaintiff argues that the ALJ failed to consider Plaintiff's obesity. The Commissioner counters that Plaintiff is not obese. The National Institutes of Health's Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults classify having a BMI of 30.0 or above as being obese. SSR 02-1p, 2002 WL 34686281, at *2. Plaintiff points out that she had a BMI of 30.09 on August 30, 2016, when she weighed 180.8 pounds. (AR 620). She also notes periods of weight gain in her relevant medical history, *see* (AR 708, 704, 741), but at those times her weight after the reported gain was less than 180 pounds and yielded a BMI of under 30.0. Plaintiff identifies no medical record showing a medical diagnosis of obesity.

Social Security Ruling 02-1p was in effect at the time of the ALJ's decision. This ruling provides that, absent a diagnosis of obesity, "[w]e will consider the individual to have obesity as long as his or her weight or BMI shows essentially a consistent pattern of obesity." SSR 02-1p, 2002 WL 34686281, at *4. Plaintiff has identified one time in the medical evidence when she was above the BMI threshold for obesity. At other times, she was under it. There is no "consistent pattern of obesity" here, nor is there a diagnosis of obesity. There is no basis for remand here.

## B. Listed Impairments

Plaintiff argues that the ALJ erred in finding that Plaintiff did not have a condition that met or medically equaled listed impairment 1.04(A). The ALJ stated that Plaintiff did not meet Listings 1.02 and 1.04. (AR 12). Plaintiff contends that the Seventh Circuit Court of Appeals requires a more robust analysis. However, as will be discussed below, the ALJ named the listing and stated why she did not find it to be met, and her treatment of the relevant evidence later in her decision is sufficient.

Plaintiff argues that she could meet the requirements of Listing 1.04 for disorders of the spine. *See* 20 C.F.R. Pt. 202, Subpt. P., Appx. 1, § 1.04. She also contends that, even if she does not meet Listing 1.04, her conditions medically equal it.

Listing 1.04(A) covers disorders of the spine "resulting in compromise of a nerve root (including the cauda equina) or the spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 202 Subpt. P., App. 1, § 1.04(A).

The ALJ acknowledged that Plaintiff has lumbar spine stenosis and radiculopathy. The evidence shows a decreased range of motion in Plaintiff's back, (AR 546[1], 621), and some muscle weakness accompanied by sensory loss, (AR 709). Plaintiff misquotes the listing as requiring sitting *or* supine positive straight-leg raising test, and this proves important to resolving this issue. While Plaintiff has identified several times in the record where she has a positive straight-leg test, none of these records indicate that the test was positive in both the sitting and supine positions.

---

[1] This evidence is dated four days before Plaintiff's alleged onset date.

4

The ALJ stated that the evidence did not show neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory reflex loss, and positive straight leg raising in both the sitting and supine positions. (AR 12). This wording is ambiguous. The ALJ could mean that each of these elements are not met by the evidence in the record, or the ALJ could mean that one or more of these elements is not met.

Later in the ALJ's decision, the ALJ discussed Plaintiff's symptoms, noting that Plaintiff's symptoms were worse before her microdiscectomy surgery and during a brief recurrence but otherwise were improved. In August 2016, Plaintiff had normal strength and gait but decreased range of motion in her back. (AR 544-46, 549). Notes from a September 8, 2016 office visit report a positive straight-leg test and antalgic gait but 5/5 motor strength in both legs. (AR 554). Plaintiff experienced recurrence of pain in 2017, with 5/5 strength in all extremities except for dorsiflexion of the lower right extremity, which was 4+/5. (AR 704). She also had diminished sensation in the right L5 dermatome and a positive straight leg raise. *Id.* During an office visit occasioned by abdominal pain, no musculoskeletal symptoms were noted by the physician. (AR 740-741). In July 2018, a Dr. Patel opined that Plaintiff's back pain is musculoskeletal and her leg pain could be residual chronic radiculopathy and not active radiculopathy. (AR 703).

Based on the evidence cited by the ALJ, there is a logical bridge from the evidence to the conclusion that Plaintiff does not meet Listing 1.04(A). There is no evidence of both sitting and supine positive straight-leg tests, and the Court cannot say the ALJ was wrong to conclude that the evidence, taken as a whole, did not demonstrate motor loss when the only evidence the Plaintiff presented in opposition was one finding of strength being 4+/5.

Plaintiff argues that, even if the ALJ was correct in finding that she does not meet the listing, the ALJ should have sought a medical opinion on equivalence. However, Plaintiff hangs

5

this argument on her insistence that she has obesity. Because the obesity argument failed, so too does the equivalence argument.

### C. Residual Functional Capacity

Plaintiff argues that the RFC found by the ALJ is not reflective of the entirety of the medical evidence of record but is instead the result of cherry-picking only the evidence that supports the ALJ's decision and ignoring the contrary evidence Plaintiff also asserts that there is no logical bridge from the evidence to the ALJ's conclusions. The ALJ found that Plaintiff can perform light work with some postural modifications. Plaintiff argues that a function-by-function analysis was needed and is lacking.

Plaintiff argues that the state agency doctors' opinions are outdated and incomplete. It appears that the ALJ agreed and, consequently, gave only little weight to these opinions. (AR 15). Plaintiff further asserts, however, that in light of the absence of medical opinions the ALJ impermissibly played doctor" by evaluating the medical evidence. This argument runs counter to the regulations, which provide that the ALJ is to assess a claimant's RFC based on all of the evidence of record. 20 C.F.R. §§ 404.1525(a)(3), 416.945(a)(3). The fact that the ALJ's assessment of Plaintiff's RFC is not based on a medical opinion does not, by itself, warrant remand. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

However, an ALJ cannot determine significance of particular medical findings. *Moon v. Colvin*, 73 F.3d 718, 722 (7th Cir. 2014) (finding error where the ALJ determined that an unremarkable MRI was inconsistent with alleged migraines). The ALJ makes much of the fact that a July 26, 2018 EMG had normal findings: "An MRI of the lumbar spine from this time showed moderate lumbar canal stenosis and enlarged L5 nerve roots (10F/8), *but an EMG was performed was normal* (9F/4)." (AR 14 (emphasis in original)). However, the ALJ is not permitted to play

6

doctor and determine that normal EMG results undermine the MRI reading or the alleged severity of Plaintiff's symptoms. This was error on the ALJ's part.

By finding that Plaintiff could perform light work, the ALJ found that Plaintiff can lift and carry 20 pounds at a time with frequent lifting or carrying of 10 pounds. *See* 20 C.F.R. § 404.1567(b). Plaintiff testified that she could carry a gallon of milk. She was cleared to work in October 2016 with the restriction, *inter alia*, of not lifting over 10 pounds. (AR 442). Plaintiff testified that another physician cleared her for work in August 2017 that involved lifting a maximum of 10 pounds. (AR 46). Another physician cleared her for work in January 2018, also with a restriction of lifting 10 pounds at most. (AR 397). The ALJ did not specifically analyze Plaintiff's ability to lift and carry, though she did note this evidence. The ALJ discounted the physicians' opinion evidence as being only temporary in nature, but that disregards the fact that multiple opinions were made that Plaintiff's ability to lift was capped at 10 pounds from October 2016 to January 2018. There is no logical bridge in the ALJ's decision that leads to the conclusion that Plaintiff can lift or carry 20 pounds at a time.

Due to the ALJ improperly interpreting the EMG herself and not providing a logical bridge regarding Plaintiff's ability to lift, remand is required.

Regarding other matters, Plaintiff argues that the ALJ failed to consider Plaintiff's use of a cane on her ability to work. The ALJ noted Plaintiff's testimony that she uses a cane for balance and ambulation, (AR 13), but disregarded this by noting that Plaintiff had not be prescribed a cane and there was no evidence of Plaintiff using a cane at work after onset, (AR 14). Plaintiff directs the Court to evidence in support of her use of a cane. *See* (AR 556 (using a cane to assist with the difficult walking resulting from the pain ), 615 (walking with a cane), 660 (She ambulated "into the clinic with [a] cane on the right side antalgic gait pattern.")).

7

Regarding the prescription, "[a] cane does not require a prescription," *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), and "the fact that an individual uses a cane not prescribed by a doctor is not probative of her need for the cane in the first place," *Eakin v. Astrue*, 432 F. Appx. 607, 613 (7th Cir. 2011) (citing *Terry v. Astrue*, 580 F.3d 471, 477-78 (7th Cir. 2009)). Plaintiff's cited evidence shows that the use of the cane was documented at multiple medical visits. However, Plaintiff testified that after her surgery, Dr. Mango instructed Plaintiff to not use a cane. (AR 44). The ALJ identified at the administrative hearing that Plaintiff was standing without a cane, but Plaintiff clarified that she was leaning up against the table instead. (AR 66). On remand, a more careful discussion of the evidence and analysis of Plaintiff's alleged need for a cane would be welcome.

Plaintiff argues that the ALJ did not explain the total time Plaintiff can spend sitting, standing, or walking. By finding Plaintiff capable of performing light work, the ALJ *de facto* found that Plaintiff can stand, sit, or walk for in an 8 hour workday. SSR 83-10 at *6, 1983 WL 31251. Plaintiff identifies evidence in the record where she could not maintain a particular posture for an extended period of time. The ALJ acknowledged Plaintiff's testimony that she can sit for 10 to 20 minutes, stand for 20 minutes, and walk for 10 minutes at a time. The ALJ rejected Plaintiff's testimony regarding sitting, noting that no physician provided such limitations. Again, on remand, more analysis on this issue would be beneficial.

The ALJ is also reminded of the Seventh Circuit Court of Appeals' guidance that "a claimant's dogged efforts to work beyond her physical capacity would seem to be highly relevant in deciding her credibility and determining whether she is trying to obtain government benefits by exaggerating her pain symptoms." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

**CONCLUSION**

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Her Request for Review [DE 20], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further administrative proceedings.

SO ORDERED on September 13, 2021.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN, JUDGE
UNITED STATES DISTRICT COURT
